UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINH HON QUACH et al, | Case No. 5:26-cv-03843-MAR |
| Petitioners, | |
| v. | ORDER GRANTING PETITION FOR HABEAS CORPUS AND ORDERING IMMEDIATE RELEASE |
| MARKWAYNE MULLIN et al, | |
| Respondents. | |

## I.

## **INTRODUCTION**

On July 10, 2026, Vinh Hon Quach, Sy Hien Nguyen, and Vinh Phan ("Petitioners"), proceeding through counsel, filed a Petition for Writ of Habeas Corpus ("Petition") by a Person in Federal Custody pursuant to 28 U.S.C. § 2241. ECF Docket Nos. ("Dkt.") 1 ("Pet"). Petitioners argue their continued detention in Immigration and Customs Enforcement ("ICE") custody violates their Fifth Amendment due process rights and the Immigration and Nationality Act ("INA") and seek release on their prior conditions. Id. at 32–33.[1] Respondents filed an Answer indicating they are not presenting an opposition argument. Dkt. 13. For the reasons set forth below, the Petition is **GRANTED**.

---

[1] All citations to electronically filed documents refer to the CM/ECF pagination.

## II.

## BACKGROUND[2]

### A.   PETITIONER VINH HON QUACH

Petitioner Vinh Hon Quach came to the United States as a refugee from Vietnam in 1980 when he was 11 years old.  Pet. at 8.  Petitioner was ordered removed on or around 2001 and eventually was placed on an Order of Supervision ("OSUP").  From 1997 to 2026, Mr. Quach attended every ICE check-in and complied with all requirements for his release.  Id.  Since being released, Mr. Quach has established a life here in the U.S.  Id.  Mr. Quach was gainfully employed as a warehouse manager prior to his detention.  Id.  He has a U.S. citizen wife and two U.S. citizen children who he is the primary caretaker for.  Id.  Mr. Quach regularly volunteers in his community for a local youth program.  Id.

On November 17, 2025, Mr. Quach presented himself to the Santa Ana ICE Field Office for his regular check-in and was re-detained by ICE.  Pet. at 9.  Upon arrest, officers only told him he was previously ordered removed but did not provide any further explanation of why he was being detained.  Id.  Officers did not tell Mr. Quach if he was being removed to Vietnam or any other country.  Id.  Officers did not inform him whether travel documents were requested for him or of the timeline for his removal.  Id.  Officers did not provide him an opportunity to respond to any potential reasons for his re-arrest.  Id.  Mr. Quach was then transferred to ICE's B-18 facility in downtown Los Angeles, where he was detained for three days.  Id.  He was kept in a holding room with twenty other individuals and was forced to sleep on the floor.  Id.

---

[2] The following facts are taken from the Petition, which is verified by Petitioner's counsel.  Dkt. 1 at 34.  Respondents had the opportunity to dispute these facts or provide contrary facts, but declined to do so.  Dkt. 13.  Indeed, Respondents' only response in their Answer is that "Respondents are not presenting an opposition argument at this time."  Id. at 2.  Accordingly, the facts presented by Petitioner are undisputed and conceded.  See C.D. Cal. L.R. 7-12.

Mr. Quach was then transferred to where he is currently detained at the Adelanto ICE Processing Center in Adelanto, California. Id. To this day, Mr. Quach has not been given information about his removal to Vietnam or any other country, the status of his travel documents, or a timeline for his detention and contemplated removal. Id. at 9–10. Since being detained Mr. Quach's health has deteriorated due to his ongoing medical condition. Id.

**B.   PETITIONER SY HIEN NGUYEN**

Petitioner Sy Hien Nguyen came to the United States as a refugee from Vietnam in 1982 when he was 6 years old. Pet. at 10. He was ordered removed on or about March 2012. Id. Because Respondents could not find a country to remove him to and after determining he was neither a flight risk nor a danger to the community, Respondents released Mr. Nguyen on an OSUP. Id.

For the last decade, Mr. Nguyen attended his ICE check-ins and complied with all OSUP requirements. Id. Since being released, he has built a life in Southern California. Id. Mr. Nguyen previously worked in shipping management but left his job to assist his U.S. citizen sister when his brother-in-law unexpectedly passed away. Id. at 10–11. Mr. Nguyen became the full-time caretaker for his U.S. citizen niece (age 9) and nephew (age 8), assuming a father figure role. Id. at 11. Mr. Nguyen was also responsible for the children's daily care and routine. Id. He took them to school each morning, picked them up, and accompanied them to their frequent therapy and medical appointments. Id. Mr. Nguyen was also a regular volunteer in his community. Id. He participated with the local Girl Scout's chapter and assisted with community service activities like food drives and fundraising event. Id.

On or around May 14, 2026, Mr. Nguyen presented himself to the Santa Ana ICE Field Office for a check-in and was re-detained by ICE. Id. While they were detaining Mr. Nguyen, officers asked for his ties to Vietnam but did not further explain to him why he was being detained. Id. Officers did not inform him of the specific timeline for any requested travel documents or his eventual removal. Id.

3

Officers did not provide him with an opportunity to respond to any potential reasons for his re-arrest. Id. After being detained in Santa Ana, Mr. Nguyen was eventually transferred to the Adelanto ICE Processing Center in Adelanto, California where he is currently detained. Id. at 12. To this day, Mr. Nguyen has not been given information about his removal to Vietnam or any other country, the status of his travel documents, or a timeline for his detention and contemplated removal. Id. Since being detained Mr. Nguyen developed high blood pressure which now requires daily medication. Id. He is experiencing significant anxiety and emotional stress from being away from his family. Id.

**C.     PETITIONER VINH PHAN**

Petitioner Vinh Phan came to the United States as a refugee from Vietnam in or around 1979 when he was seven years old. Id. Mr. Phan was ordered removed in 2000. Id. at 13. From 2000 to 2026, Mr. Phan complied with all check-in requirements for his release without incident. Id.

Since his more than two-decade release, Mr. Phan has established a productive and meaningful life here in the United States. Id. He has a wife, son, and two young granddaughters who are all U.S. citizens. Id. His elderly mother holds lawful permanent resident status. Id. Prior to his detention, Mr. Phan supported each of them through a small business he has owned and operated for many years. Id. Mr. Phan was also receiving medical care for his diabetes and taking medication three times a day for his condition. Id. On or around June 20, 2026, Mr. Phan left his home in Anaheim and was driving to work when his car was blocked by numerous unmarked vehicles. Id. Immigration agents came to his window and demanded Mr. Phan to get out. Id. When Mr. Phan asked who they were, agents identified themselves as ICE officers, smashed his car window, and dragged him out of his car. Id. The ICE officers only read Mr. Phan's name from a paper he was not shown and was then arrested. Id. Mr. Phan was then taken to the Santa Ana field office where he had his photo taken and fingerprinted. Id. Officers directed him to sign a form

4

confirming that his photo was himself.  Id.  Upon signing, officers told Mr. Phan he was being deported to Vietnam.  Id.

On or around the evening of June 20, 2026, Mr. Phan was transferred to Adelanto ICE Processing Center in Adelanto, California where he remains today.  Id. at 14.  After a few days in Adelanto, immigration officers asked Mr. Phan about his connections to Vietnam.  Id.  At no point was Mr. Phan told why his removal was now likely, if travel documents were requested for him or of the timeline for his removal from the United States.  Id.  At no point did Respondents provide Mr. Phan an opportunity to respond to any potential reasons for his rearrest.  Id.  To this day, Mr. Phan has not received any further information or documentation indicating the reason for his arrest or about his contemplated removal to Vietnam.  Id.  Since being detained, Mr. Phan has endured severe stress and anxiety while being away from his family.  Id.  His family is feeling substantial strain due to his absence: his wife and elderly mother have had to return to work and his son, a new father, now has found himself as the head of the household.  Id.

### III.

### DISCUSSION

**A.    ZADVYDAS CLAIM**

Generally, when a final order of removal is entered against an alien, the government will remove that person from the United States within a ninety-day "removal period."  Zadvydas v. Davis, 533 U.S. 678, 682 (2001); 8 U.S.C. § 1231(a)(1)(A).  During that period, the government will normally hold the removable alien in custody.  Zadvydas, 533 U.S. at 682; 8 U.S.C. § 1231(a)(2)(A).  In some circumstances, the government may detain a removable alien beyond the ninety-day removal period.  8 U.S.C. § 1231(a)(6); see also Zadvydas, 533 U.S. at 689.

However, Section 1231(a)(6) includes an implicit limit on "an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States."  Id. at 689.  "[O]nce removal is no longer reasonably

foreseeable, continued detention is no longer authorized by statute." Id. at 699. Recognizing constitutional concerns raised by such prolonged detention, the Supreme Court observed "Congress previously doubted the constitutionality of detention for more than six months," and, therefore, "for the sake of uniform administration in the federal courts," established a presumptively reasonable six-month period for post-removal-order detention. Id. at 701. This six-month period is a presumption, not a guarantee of release, and detention may continue so long as removal remains reasonably foreseeable. Id.

After the six-month period, the burden is on the alien to show that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id.; see also 8 C.F.R. § 241.13 (setting out procedures to determine whether there is a significant likelihood of removal pursuant to Zadvydas). If the alien meets this burden, then the Government must "introduce evidence to refute that assertion" or release the alien. Id. However, the alien still "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. Importantly, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

Here, Petitioners argue that Vietnam's long-standing policy of not accepting Vietnamese immigrants who entered the United States before 1995 means that there is not a significant likelihood of Petitioners' removal in the reasonably foreseeable future. Pet. at 14–17. It is undisputed that Petitioners arrived in the United States before 1995, were ordered removed between 2000 and 2012, and Respondents did not remove them during the initial "removal period" nor during the decades since they have been subject to removal orders and OSUP. Id. at 2. Therefore, the 90-day removal period expired years ago and the question is whether Petitioners' removals are reasonably foreseeable. See Zadvydas, 533 U.S. at 701. Petitioners have not been

given information about their removal to Vietnam or any other country, the status of their travel documents, or a timeline for their detention and contemplated removal.

There is no indication from ICE that the Government of Vietnam has found Petitioners eligible for repatriation. There is no indication that Respondents are likely to secure travel documents for Petitioners, the timeline in which requests for such documents have been made, or information regarding the length of time it will take to effectuate such a removal. Id. at 16, 31. Many courts have found that removal to Vietnam was not reasonably foreseeable under similar circumstances. See, e.g., Hung v. Marin, 2026 WL 712220, at *5 (C.D. Cal. Mar. 5, 2026) ("Notably, Hung was initially ordered removed in 1997, with Vietnam being designated as the country of removal. Despite being ordered removed more than twenty-seven years ago, no travel document was procured and Respondents have not provided any indication beyond anecdotal accounts that removal is reasonably foreseeable. Taken together, Hung's circumstances raise doubts that Vietnam will accept him." (citations omitted)); Truong, v. Lyons, 2026 WL 855150, at *7 (C.D. Cal. Mar. 20, 2026) ("[T]he mere fact that a request for Petitioner's travel documents was sent to Vietnam on January 8 is not enough to show that Petitioner's removal is reasonably foreseeable."); Kuot v. Bondi, 2025 WL 3763930, at *2 (W.D. Wash. Dec. 30, 2025) ("Petitioner has met his burden because it is undisputed the government has failed to indicate a date or timeframe for his removal, has not even completed a travel document request to submit to Vietnam and has not set forth facts showing when it expects to finalize or send the travel document request to Vietnam."). Petitioners have met their burden to show there is no significant likelihood of their removal in the reasonably foreseeable future. Zadvydas, 533 U.S. at 701.

Respondents have chosen not to present an opposition to the Petition. Dkt. 13. Therefore, Respondents have failed to meet their burden to rebut Petitioners' contention that their removals are not reasonably foreseeable. See, e.g., Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16,

2025) (finding no significant likelihood of removal where the respondents failed to provide "any details about why a travel document could not be obtained in the past, nor…why obtaining a travel document is more likely this time around").

In sum, the Court concludes that Petitioners' removal is not reasonably foreseeable under Zadvydas.  See Zadvydas, 533 U.S. at 701.  Accordingly, Petitioners' detention under 8 U.S.C. § 1231(a)(6) is no longer authorized and Petitioners is entitled to release.  See id. at 699 ("[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."); Nadarajah, 443 F.3d at 1080.

The Court further concludes that Petitioners are entitled to notice and an opportunity to respond that comports with 8 C.F.R. § 241.13(i) should Respondents attempt to re-detain Petitioners in the future.  See, e.g., Valdez-Batista v. Immigr. & Customs Enf't Field Off. Dir., 2026 WL 449531, at *4 (W.D. Wash. Jan. 30, 2026) ("[I]n the event they seek to re-detain Petitioner in the future, Respondents must provide notice and an opportunity to respond that comports with 8 C.F.R. § 241.13(i).").  Indeed, the re-detention of a noncitizen subject to a final order of removal is governed by 8 C.F.R. § 241.13.  The regulation was "intended to provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release."  Constantinovici v. Bondi, 806 F. Supp. 3d 1155, 1163 (S.D. Cal. 2025) (internal quotation marks, brackets, and ellipses omitted).  The regulation states, in part, that "[t]he Service may revoke [a noncitizen's] release under this section and return the [noncitizen] to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13.  The regulation also provides that, "[u]pon revocation [of an OSUP], the [noncitizen] will be notified of the reasons for revocation of his or her release," and that there will be "an initial informal interview promptly after his or her return to Service custody to afford the

8

[noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3).

The Court further concludes that Petitioner is entitled to written notice and a meaningful opportunity to respond in reopened removal proceedings under 8 U.S.C. § 1231(b)(3) before any attempted third-country removal. See, e.g., Valdez-Batista, 2026 WL 449531, at *5 ("Accordingly, should Respondents take steps to remove Petitioner to a [third country], they must provide Petitioner with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3)."). Where the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but it must comply with both the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b), and the Due Process Clause. See Aden v. Nielsen, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); Kumar v. Wamsley, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025) ("[T]he Government must follow the same multi-tiered process for selecting a country of removal that applied in the removal proceedings."). To comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. See Aden, 409 F. Supp. 3d at 1019. Moreover, the INA prohibits ICE from removing a noncitizen to any country where their "life or freedom would be threatened . . . because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The Government must "make a determination regarding a noncitizen's claim of fear before deporting him." Aden, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A).

Many courts have held that if a noncitizen claims fear of removal to a designated third country, the Government must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge. See,

e.g., Nguyen v. Scott, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025) ("Both the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims. This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held." (internal quotation marks, brackets, and citation omitted)); accord A.A.M. v. Andrews, 815 F. Supp. 3d 1124, 1141 (E.D. Cal. 2025); Gomez v. Mattos, 2025 WL 3101994, at *6 (D. Nev. Nov. 6, 2025); M.T.M. v. Andrews, 2025 WL 4058220, at *9 (C.D. Cal. Sept. 11, 2025).

**B.      DUE PROCESS CLAIM**

Furthermore, it is undisputed that Petitioners have been living in the United States since at least 1982 and have worked as caretakers and provided financial support to their families.  Each Petitioner has been gainfully employed, taken care of their United States citizen or permanent resident family members, and has been involved in their communities.  See Pet. at 9–13.  It is also undisputed that Petitioners were last released on an OSUP between 20 and 30 years ago, and through all that time, they have followed all the rules and have not violated any term of the OSUP.  Id.  Thus, the Court concludes that once Petitioners were released from custody under the OSUP, they acquired "a protected liberty interest in remaining out of custody."  Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country.").  Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release."  Pinchi, 792

F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted).  This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]."  Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Petitioners' liberty interest is particularly strong here because of the length of time they have been in the United States and the lives they have built working in the community.  See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.").  Indeed, Petitioners have lived as law-abiding individuals and worked steadily as caretakers and workers for decades.  Pet. at 9–13.  Petitioners' undisputed ties to the community further strengthen their liberty interest in remaining out of custody.  See, e.g., Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

It is also undisputed that Petitioners were detained without pre-deprivation hearings.  Pet. at 28.  Thus, the Court concludes that Petitioners' detentions without pre-deprivation hearings violated their procedural due process rights.  See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

11

Due process requires notice and a pre-deprivation hearing before Petitioners may be re-detained. See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)).

Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioners are a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

Finally, the Court notes that Petitioner also requested an award of reasonable attorneys' fees and costs. Pet. at 33. The Court will consider an application under the Equal Access to Justice Act ("EAJA") that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

12

IV.

ORDER

**IT IS THEREFORE ORDERED**:

(1) the Petition is **GRANTED**;

(2) Respondents are **ORDERED** to immediately release **Petitioners Vinh Hon Quach (A# 023-866-496), Sy Hien Nguyen (A# 025-364-437), and Vinh Phan (A# 023-805-775)** from custody subject only to the conditions of their prior Orders of Supervision and return all property taken from Petitioners during their arrests and processings into detention;

(3) Respondents are **ORDERED** to file a Notice of Compliance within forty-eight hours of this Order;

(4) Respondents are **ORDERED** not to re-detain Petitioners without first following all procedures set forth in 8 C.F.R. §§ 241.4, 241.13, and any other applicable statutory and regulatory procedures; and unless they afford each Petitioner a hearing before a neutral adjudicator, where the government bears the burden of proof by clear and convincing evidence that their re-detention is justified based on changed circumstances;

(5) Respondents are **ORDERED** not to re-detain Petitioners under 8 U.S.C. § 1231(a)(6) unless and until Respondents obtain a travel document for their removal; and

(6) Respondents are **ORDERD** not to remove or attempt to remove Petitioners to any country other than Vietnam without adequate notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings under 8 U.S.C. § 1231(b)(3).

Dated:  July 21, 2026

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge

13